140 So.2d 311 (1962)
In re GUARDIANSHIP OF Iva Mae Palmer WHITE, an Incompetent.
No. C-481.
District Court of Appeal of Florida. First District.
April 19, 1962.
Rehearing Denied May 14, 1962.
*312 W.J. Gardiner, Daytona Beach, for appellant.
Raymond, Wilson & Karl, Daytona Beach, for appellee.
STURGIS, Judge.
We review an order of the County Judge's Court of Volusia County entered in the matter of the estate of Iva Mae Palmer White, an incompetent, whose disabilities have been removed. The appeal is prosecuted by her husband, Harvey E. White, individually and as legal guardian of the property of said incompetent, and by W.J. Gardiner, the attorney for said guardian; the appeal of the latter having to do only with the source from which, according to the order, payment is to be made of fees allowed to said attorney for legal services rendered on behalf of the ward's estate.
Promptly upon being restored to competency the ward filed a petition in said guardianship proceeding the general object of which was (1) to have the guardian held in contempt of court for failure to comply with orders theretofore entered in the proceedings, (2) to re-examine in the light of objections filed by the ward the annual returns filed by the guardian, which had theretofore been approved by orders of said court under circumstances hereinafter related, and (3) to require the guardian to finally account for and deliver to the ward the property of her estate remaining in his hands. Upon filing thereof, the County Judge forthwith entered an order setting a date for hearing and directing the guardian to produce at such hearing all books, records, documents and accounts pertaining to the guardianship and to several concerns, including Norm-Glo, Inc., a corporation in which the guardian held legal title to all outstanding stock and in which the ward claimed an interest. Said order also directed the guardian to make a showing of his management and handling of several matters allegedly having to do with property rights of the ward. The guardian moved the court to dismiss said petition and to strike severally each paragraph and sentence thereof; and without waiving said motions, also filed an answer the general effect of which was to put in issue all material allegations of the petition. Upon final hearing, the court entered the order appealed, which is to the following effect, in substance:
(1) Allowed a fee of $2,000.00 to appellant Gardiner for legal services rendered on behalf of the guardianship, with the proviso that payment should be made out of a specific fund, namely, money payable by the guardian to the ward as ordered therein.
(2) Held that the charges made by the petition were well founded, except that certain allegedly missing accounts of the guardian, which had evidently been overlooked, were in fact among the court records.
*313 (3) Held that since notice of hearing on the accounts of the guardian was not given and served in accordance with Section 744.29, Florida Statutes, F.S.A., the court was entitled to consider and rule on the ward's objections to said accounts.
(4) Held that the objections of the ward to certain items of disbursement charged against her by the accountings of the guardian were sustained, and disallowed any credits therefor to the guardian.
(5) Held that the guardian had failed to account for and there was due by the guardian to the ward the sum of $412.50, constituting the value of her one-half interest in a certain 1953 four-door automobile which the guardian had disposed of.
(6) Held that the ward had a one-half interest, of the value of $1,832.50, in a 1956 Chrysler Imperial automobile which the guardian had traded for a 1958 Chrysler automobile the title to which was taken in the name of Norm-Glo, Inc., a corporation. The court undertook by the hereinafter mentioned provisions relating to said corporation to adjust said interest of the ward in the automobile so disposed of by the guardian.
(7) Held that the guardian, in violation of his duties as such incident to the operation of a partnership business jointly owned by him and the ward and which with the consent of the court he continued to conduct during the period of the ward's incompetency, caused a corporation known as Norm-Glo, Inc., to be formed and utilized, without the approval of the court, for the purpose of operating and conducting a competing business to that of said partnership, and held that said corporation was in truth and substance only an extension of the partnership operation.
(8) The court took note of the fact that said corporation was organized on March 17, 1958, that the ward's disabilities were removed on April 23, 1959, and that the guardian had made no accounting to the ward of the income and profits for that period, which were denied to the partnership by the above mentioned business operations of said corporation, and for the purpose of establishing the amount due to the ward in that behalf adopted as a norm evidence reflecting the net profits of said corporation for the tax year beginning October 1, 1958, and ending September 30, 1959. On that predicate the court held that the amount due by the guardian to the ward in the premises was $2,330.63, and ordered the guardian to pay said sum to the ward.
(9) Held that the guardian had not paid, credited, or remitted to the ward her share of the profits, as reflected by the guardian's accounts, of the aforesaid partnership owned jointly by the guardian and ward; that there was due and owing from the guardian to the ward in that behalf the sum of $2,782.24 for the first accounting period under the guardianship (May 22, 1957, through December 31, 1957); that the amount so due and payable for the second accounting period (January 1, 1958, through December 31, 1958) was $3,734.36; and that the amount so due and payable to the ward for the final accounting period (January 1, 1959, through April 23, 1959) was $1,544.65.
(10) Ordered the guardian to (a) cause to be transferred to the ward within ten days from the date of the order one half of the outstanding capital stock of Norm-Glo, Inc., and thereafter to refrain from transferring the voting stock of the corporation so that the holding of the ward will not be reduced to less than one half of the outstanding voting stock of the corporation; and (b) within thirty days from said date remit for the account of the ward the sum of $10,804.38 (being the total of the aforesaid amounts found to be due) "by paying $2,000.00 to W.J. Gardiner [the attorney for the estate] and the balance of $8,804.38 to Iva Mae Palmer White [the ward]."
The substantial points of law presented by this appeal may be summarized as follows:
1. Whether the County Judge's Court had power to re-examine and re-adjudicate such of the returns of the guardian as had theretofore been approved by order of the *314 court; it appearing that the orders approving same were entered without notice to the ward.
2. Whether said court had the power, in settling the guardianship accounts, to require the guardian to pay to the ward, whose disabilities had been removed, a sum of money found to be due by the guardian to the ward, under pain of being held in contempt for failure so to do.
3. Whether said court had jurisdiction to decree, in effect, that Norm-Glo, Inc., a corporation not a party to said proceeding, held one half of its corporate property in trust for the use and benefit of the ward, and to require the guardian, in whose name all of the outstanding corporate stock was issued, to convey one half of his stock therein to the ward in settlement of the ward's continuing interest in the corporation.
4. Whether said court used a lawful evidentiary basis in fixing the sum of $2,330.63 as the amount of income lost to the ward during the period from March 17, 1958, to April 23, 1959, as a result of the fraudulent organization and operation by the guardian of the aforesaid corporation known as Norm-Glo, Inc., which corporation was utilized to directly compete in business with White's Manufacturing and Dispensing Opticians, a partnership jointly owned by the guardian and the ward, which partnership, pursuant to authority of the court, was operated during said period under the management of the guardian. (Note: In order to fix the amount due by the guardian to the ward in the premises, the court adopted as a norm one half of the net profits of said corporation for the tax year beginning October 1, 1958, and ending September 30, 1959, as reflected by the evidence, and by applying that norm ratably to the mentioned period  March 17, 1958, to April 23, 1959  found that $2,330.63 was the amount due in the premises.)
5. Whether it was error to require that the fee allowed to the appellant attorney for the legal services rendered by him on behalf of the ward's estate be paid exclusively out of the fund ordered to be paid by the guardian to the ward in settlement of the guardian's accounts, rather than to permit the same to be satisfied out of any property of the ward's estate available for the purpose.
The testimony adduced in this cause is not included in the record on appeal, hence the only facts before this court are those disclosed by the pleadings and expressly or impliedly reflected by the order appealed. In that posture, we indulge the presumption that had the evidence been included, it would have been sufficient to support all factual findings of the lower court. See Gaddis v. Atlantic Auto Rental, Inc. (Fla.App.), 130 So.2d 295, and cases cited therein.
Contrary to the recitation of orders approving certain annual accounts of the guardian, entered by a judge of the circuit court acting in the absence of the County Judge, it appears that objections to the guardian's accounts had actually been filed by the ward and were pending at that time. While it is true that F.S. § 744.29, F.S.A. provides only a method for service of process upon a ward, that the guardian is not thereby required to serve the ward with notice of his annual accounts, and that an order finally approving such accounts may under appropriate circumstances be impervious to modification, it is well settled that entry of such an order is not under the facts in this case the equivalent of a final decree or judgment precluding re-examination and re-adjudication on the basis of subsequent objections to such returns. The rule is summarized in 11 Florida Law and Practice, Guardian and Ward, Section 52, footnote 304, as follows:
"Approval by the county judge of a guardian's annual account is not the equivalent of a judgment which may not be collaterally attacked by the ward or someone in his behalf; the rule being that annual or partial accounts, although approved by the court, have not the force and effect of a final judgment and are in no sense conclusive of *315 the correctness thereof unless made so by statute. They are, however, prima facie evidence of their correctness if made in conformity with the statutes. American Surety Co. of New York v. Andrews, 152 Fla. 638, 12 So.2d 599 (1943); Firmin v. Sanborn, 119 Fla. 396, 161 So. 555 (1935)."
In Stevens v. Hooks (Fla. 1960), 125 So.2d 581, the Florida District Court of Appeal held that the annual accounts there involved, which had been previously approved by order of court, were subject to re-examination.
Section 745.26, Florida Statutes, F.S.A., provides:
"(1) Upon the filing of returns with the county judge by the guardian as provided in this law, any person interested as creditor or otherwise, after the filing of such returns, may file objections in writing thereto or to any item thereof within thirty days after April 1st of each year, specifying the grounds of objection. No item previously approved by order of the county judge upon notice shall be subject to objection." (Emphasis supplied.)
The order appealed reflects that the orders approving the guardian's returns were entered without notice to the ward. The inescapable implication of F.S. § 745.26, F.S.A. being that under such circumstances the orders approving the returns were subject to collateral attack, the lower court did not err in re-examining them.
Although the County Judge's Court has power to settle the accounts of the guardian and where the disabilities of the ward have been removed, as in this case, to require the guardian to pay to the ward any amounts found to be due from the guardian, under pain of being held in contempt for failure so to do (F.S. § 744.06, F.S.A. provides that the County Judge "may enforce his orders in a summary way by attachment for contempt and by imprisonment"), the court does not have power in a guardianship proceeding to enter a money judgment against the guardian for amounts found to be due the ward, and the order appealed does not violate that concept. It is primarily addressed to settlement of the accounts between the guardian and his ward and to requiring the guardian to pay to the ward the amount found due. It does not purport to dispose of the interests of the ward in the physical property of the partnership or related to transactions subsequent to the date the ward was adjudged competent, nor does it undertake to place a value upon the interest in Norm-Glo, Inc., that it undertook to vest in the ward. It attempts, however, "to adjust the rights of ownership" in said corporation by directing the guardian to transfer to the ward one half of the outstanding capital stock thereof and to refrain from causing any additional shares therein to be issued "so that after such transfer is made, the capital stock transferred to * * * [the ward] shall continue to represent one half of the capital voting stock of Norm-Glo, Inc." We will later discuss that phase of the order.
The County Judge's Court unquestionably had the power, in settling the guardian's accounts, to trace the property of the ward to whatever uses and purposes the same was employed, and to require the guardian to fully account for all profits which actually were or by the use of due diligence might have been derived therefrom. To that end it was proper for the County Judge's Court to surcharge the guardian's accounts with the loss suffered by the ward as a result of the fraudulent acts of the guardian in funneling off from the partnership business, and into the hands of the corporation set up by him with that design, of business which the partnership was entitled to enjoy. Absent a more exact yardstick by which to measure the loss, it is reasonable to presume that the diverted business would have produced a net profit to the partnership equal to that derived therefrom by the corporation. The factor employed by the court below in calculating such loss for the period from March 17, *316 1958, to April 23, 1959, though admittedly inexact, was a proper basis for the purpose. After all, it is not made to appear that the appellant (guardian), on whom the duty to account at all times rested, presented a more accurate basis for the determination or that any other basis was available.
A more difficult problem arises from the provisions bearing upon the outstanding stock of Norm-Glo, Inc. Upon holding that the formation of Norm-Glo, Inc., by the guardian and the conduct of the corporate business under his direction was in violation of his official duties, and further holding that said corporation is in truth and substance but an extension of the partnership operation (White's Manufacturing and Dispensing Opticians), the court ordered the guardian to transfer to the ward one half of the capital stock of said corporation and to thereafter refrain from disturbing the outstanding stock ownership of the corporation in such manner as to reduce the ward's holding to less than 50% of its voting stock. The legal effect of this provision upon the guardian individually and purportedly upon the corporation (though the corporation cannot be bound because it is not a party to the cause) is to establish a resulting trust in favor of the ward, both as to the stock in the guardian's name that was ordered to be transferred to the ward, and as to the property of the corporation. The County Judge's Court does not have power to grant such relief. Jurisdiction over trust estates and suits to establish trusts belongs exclusively to courts of equity. In this category are suits by a ward to impose a trust on property wrongfully converted or alienated by the guardian. Beck v. Barnett National Bank of Jacksonville (Fla.App.), 117 So.2d 45. While the County Judge's Court follows equity practice and procedure to the extent applicable, it is nevertheless a court of limited jurisdiction and its authority in guardianship matters is conferred by statute and strictly construed. The limitations on its jurisdiction in guardianship matters is clearly recognized by Section 744.06(3), Florida Statutes, F.S.A., which provides:
"No court of equity shall be deprived of its inherent jurisdiction to appoint or to remove guardians or require of them accountings of their trusts or to administer the estates of wards in cases in which equitable intervention is necessary for complete and adequate relief."
We hold, therefore, that the lower court exceeded its jurisdiction in undertaking to require the guardian to transfer to the ward a part of the stock in Norm-Glo, Inc., and in otherwise attempting to exercise control over the stock of said corporation. This holding, which is the only particular in which the order appealed is found to be in error, is not to be construed as having any force or effect upon the other phases of the order appealed and which, except as to the matter concerning attorney's fees, disposed of in the next paragraph, are severally affirmed.
An attorney who at the instance of the guardian performs necessary legal services on behalf of the estate of an incompetent is entitled, in the absence of a contrary agreement, to be compensated out of any property of the estate available for the purpose, and it is error to confine payment thereof to a particular fund or particular property of the estate, as was done in this case. Appellant Gardiner is entitled to be compensated accordingly.
All assignments of error and points on appeal that are argued in the briefs have been duly considered and except as otherwise indicated by our within conclusions, are found to be without merit.
This decision is not to be construed as prejudicing the right of the appellee to pursue in an appropriate forum any lawful claim for relief not fully encompassed by the relief afforded to her under the order appealed.
Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
CARROLL, DONALD K., C.J., and WIGGINTON, J., concur.